## LAYTON STRICKLAND v. THE STATE.

### No. 4556.   Decided October 17, 1917.

**1.—Theft of Hog—Insufficiency of the Evidence.**

Where, upon trial of theft of hogs, the evidence showed that the defendant publicly drove the hogs in question into a lot and killed some of them, and the alleged stolen hogs were not sufficiently identified, the conviction could not be sustained. Prendergast, Judge, dissenting.

**2.—Same—Charge of Court—Venue.**

Where the court's charge on the question of venue, on a trial of theft of hogs, was on the weight of the evidence, the same was reversible error. Following Williams v. State, 11 Texas Crim. App., 275. Prendergast, Judge, dissenting.

Appeal from the District Court of Nacogdoches.   Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Ford Clevinger* and *Ingraham & Watson,* for appellant.—On question of insufficiency of the evidence and charge on venue: Thomas v. State, 34 Texas Crim. Rep., 481; McMahon v. State, 46 id., 540; Gilcrease v. State, 33 Texas, 619; Johnson v. State, 41 Texas, 608.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—This appeal is prosecuted from a hog theft conviction, with two years punishment assessed.

The evidence for the State sought to show that appellant and his half brother, Newt Snell, jointly committed the theft of hogs from Henry Crawford. There is evidence to show that the hogs ranged some time in Angelina County and some time in Nacogdoches County. The indictment charged the theft of eight hogs. Mr. Crawford testified that he had that number, consisting of a sow and some pigs, and perhaps one or two others, making the total number eight. That they were marked two splits in each ear. Appellant had some hogs, a sow and nine pigs, as shown by his testimony. His mark was two splits in one ear and one split in the other ear. One morning about sunrise appellant and his half brother, the codefendant, drove to the residence of Tom Pinkard a bunch of hogs. Pinkard opened the gate to the lot into which these hogs were driven. That the two defendants went away and were gone a little while and returned with another bunch of hogs, placing them in the same pen. The gate, it seems, this time was opened by the son of Tom Pinkard. Tom Pinkard in the meantime had gone to the field to work. Immediately upon getting these two bunches of hogs in Pinkard's lot, amounting to eighteen or twenty head, appellant and his half brother killed three of them and cleaned them in the lot, Mrs. Pinkard assisting them in some of the work. When the hogs were

dressed they got a horse and buggy belonging to Mr. Pinkard, placed the three hogs in it and carried them to their home. After reaching their home these hogs were seen and examined by two witnesses who testified in the case, Frank Welch and J. C. Click. Welch describes the hogs, as does the defendant and his half brother, as being two barrows and a sow. The State's witness lost one barrow and two sows. This witness, as did Click, stated that the ears on the hogs brought home in Pinkard's buggy bore the mark of two splits in one ear and one split in the other. Click testified he also examined the hogs and remembers the fact that these hogs were there, and he saw them after they had been cleansed. He says: "I looked at the hogs because I had heard something about the boys and I was obligated to watch them; I promised to watch them and I done so. I was over there and noticed some lard and I asked them where they got it, and they told me about killing the hogs. I went in where they had the meat and I saw the hogs' heads and I got down on my knees and looked at them and I noticed the mark. The mark was two splits in the right ear and one split in the left. All of the heads were right there together and I noticed all of the marks. . . . I was watching these boys at the time. As to whether or not I had been told they would steal hogs, will say I had been told to watch them and I was doing it. I believe I had been told that they would steal hogs; two men told me that, but they were together at the time they told me; they told me on one Sunday morning." He gives this as the reason why he was particular to notice the hogs and see whether or not they were stolen. In other words, his testimony gives evidence of the fact that he was trying to ascertain whether these were stolen hogs. Appellant testified these were his hogs—pigs of the sow above mentioned, and his codefendant also so testified. Pinkard, Adams and Mrs. Pinkard all testified for the State. It was claimed and admitted by the defendant that some of the hogs he placed in the pen were the property of Crawford, and he drove these hogs up because he could not separate his from them, and put them in the pen, and killed his three and turned out the other hogs. There is also testimony to the effect that after they were turned out of the pen they were several times seen in the neighborhood where the hogs were killed. Appellant stated, among other things, the reason he did not carry them down to his own house, which was two or three miles away, was because it was difficult to drive them; that he had no dogs to "rally" them, so he put them in a lot at Mr. Pinkard's and there killed them. Appellant further stated that he found these hogs not a great ways from the residence of Pinkard the evening before about the time they "bedded up," and he put them in the enclosure of a farmer who lived at the place so that they would be able to drive them the following morning. Early the next morning they went and got them and put them in Mr. Pinkard's lot and killed three. They made a fire and heated water to scald and dress them in Mr. Pinkard's lot, and, as before stated, Mrs. Pinkard assisted them to some extent.

It is contended the evidence is not sufficient to support the conviction.

We are of opinion that appellant's contention is. correct. The public manner in which they were killed, driving them into the lot in the presence of witnesses, and assisted by one of the State's witnesses, the wife of the owner of the premises; carrying them home in the State's witness' buggy, an inspection under the circumstances stated ·by Click, and seeing the hogs by Welch, in the absence of identity of the hogs otherwise by the State, would not justify a conviction for theft of the hogs in Crawford's mark. No one undertakes to testify that appellant killed Crawford's hogs. Mrs. Pinkard who testified could have known what hogs she saw at the time in her husband's lot. The State's case may be stated in brief to be,.that Crawford owned seven hogs running together; three of them, a barrow and two sows, disappeared. Some of his hogs were put in Pinkard's lot by the defendant and his. half brother.· The missing hogs of Crawford may or may not have been among the number. This is practically the State's case, and we are of opinion.that this evidence, in view of the whole record, is not sufficient to justify sending these men to the penitentiary for the theft of Crawford's· hogs.

The court charged the jury with reference to the theft of the hogs in Angelina County, or within 400 yards of the Angelina County line, and bringing them into Nacogdoches County. Various exceptions were urged to this charge, and we believe the exceptions were well taken. The statute, it is true, provides that where hogs are stolen in one county and carried into another county, that the latter county may have venue of the case and try it. But as we understand this case there is no evidence that appellant took Crawford's hogs in Angelina County or within 400 yards of the Angelina County line. Appellant·was never seen in possession of them except at Pinkard's house in Nacogdoches County. This charge assumes that the hogs may have been stolen in Angelina County and driven into Nacogdoches County. The evidence is to the effect that these hogs ranged sometimes in one county and sometimes in the other county, but perhaps more generally in Angelina than in Nacogdoches County. There is nothing in the record, as we understand it, to show that appellant or his half brother, or either or both of them drove the hogs out of Angelina into Nacogdoches County. It seems that if they brought them from one into the other they would have to cross the river. Appellant's testimony excludes the idea and shows what possession he had of the hogs was in Nacogdoches County; that he never brought them from the other county, and there was no contention that appellant went over and got the hogs, except as a sort of inference from the fact that these hogs sometimes ranged in Angelina County. From the testimony it seems that the range of hogs in that section was rather erratic, problematical and uncertain. All the testimony goes to the effect' that when the hogs are in the range seeking acorns they wander around the country and are liable to be in one place one day and somewhere else another day, but following the hog instinct they go where the acorns are to be found. This is to be inferred from the testimony of the witnesses. In fact, it may be said

to be their testimony without an inference. It would hardly be contended that if the hogs changed their location from one section of woods to another in pursuit of acorns, that this should be attributable to appellant as having committed the theft by reason of the change of locality of these hogs by their own act. The hogs in changing their location would not change the venue or confer venue by their action so as to charge appellant with their theft in the county from or into which they may have wandered. It would hardly be a fair construction of the statute to hold that hogs could change the venue, or fail to change their location so as to confer venue in criminal cases. The taker is responsible for taking where he does the taking. Had appellant brought the hogs from Angelina into Nacogdoches County, Nacogdoches County would have had jurisdiction if theft had been committed; but the fact the hogs wandered from Angelina into Nacogdoches County would not make appellant a taker in Angelina County. This charge by the court is based upon the assumption that appellant took the hogs in Angelina County, and if he went across into Angelina County and drove the Crawford hogs into Nacogdoches County, it would tend to strengthen the State's case as to whether or not appellant committed theft. This was a serious assumption of a fact not proved, and a charge given upon it. It might not make so much difference perhaps as to the question of venue, but behind that question was the assumption that appellant got the hogs or may have gotten the hogs in Angelina County and brought them into Nacogdoches County, and this without evidence to support it. We think this charge was error, and it was really a charge upon the weight of the evidence and directly against defendant. See Williams v. State, 11 Texas Crim. App., 275.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge.—I have read the record, and read and studied the statement of facts very carefully. The facts show a strong, clear case against appellant, and without doubt amply sustains the verdict. There is no reversible error shown in this record. The case should be affirmed. I dissent.